IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JIM PROCURO,<br><br>    Plaintiff,<br><br>v.<br><br>HOSHIZAKI AMERICA, INC.,<br><br>    Defendant. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT FOR DAMAGES**

COMES NOW Jim Procuro ("Plaintiff" or "Mr. Procuro"), by and through his undersigned counsel, and files this Complaint for Damages, showing the Court as follows:

## **JURISDICTION AND VENUE**

1.

Plaintiff invokes the jurisdiction of this court pursuant to the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and 42 U.S.C. § 1981, *et. seq.* ("Section 1981").

2.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e-5(f).

3.

Defendant Hoshizaki America, Inc. ("Defendant" or "Hoshizaki") does business in this judicial district. Additionally, the unlawful employment practices committed by Defendant that form the basis of this lawsuit were committed within this district.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under the ADEA. Plaintiff filed a charge of discrimination with the EEOC in February 5, 2020; the EEOC issued its Notice of Right to Sue on July 30, 2020.

5.

This action has been commenced within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

### 6.

Plaintiff is a white citizen of the United States of America and is subject to the jurisdiction of this Court.  Plaintiff is over forty (40) years old.

### 7.

Defendant is a domestic for-profit corporation qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

### 8.

At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of Defendant, as defined under the ADEA.

### 9.

Defendant is now and, at all times relevant hereto, has been a for-profit entity engaged in an industry affecting commerce.  During all times relevant hereto, Defendant has employed twenty (20) or more employees for the requisite duration under the ADEA.

### 10.

Defendant is now and, at all times relevant hereto, has been a for-profit corporation engaged in an industry affecting commerce.  During all times relevant

hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII.   Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

11.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, CT Corporation System, at 1201 Peachtree Street, NE, Atlanta, GA 30361.

## **FACTUAL ALLEGATIONS**

12.

Defendant hired Mr. Procuro on February 5, 1998, as a Warehouse Manager. Mr. Procuro was subsequently promoted over the years, eventually assuming the position of Sr. Vice President of Sales and Marketing.

13.

Beginning in 2019, Mr. Procuro began to be discrimiated against based on his age (over 40), national origin (American), and race (white).

14.

In May 2019, Mr. Procuro was given a poor performance review for the 2018 performance year.

4

15.

The review and corresponding merit pay increase was administered by the new President of Hoshizaki America, James McDowell.

16.

Mr. McDowell based the review on and referred to Former President of Hoshizaki America, Kaz Jinno (Asian/Japanese) and did not provide an explanation as to why he was referring to the former president's assessement.

17.

Despite meeting all sales goals for year end 2018, Mr. Procuro's review was "met expectations," which was significantly lower than previous reviews Mr. Procuro had received of "exceeded expectations" and "significantly exceeded expectations."

18.

Despite meeting all sales goals for year end 2018, Mr. Procuro's merit increase following this review was the lowest of his career.

19.

No explanation was provided by Defendant for the poor performance review or an explanation of what Mr. Procuro needed to do to improve.

20.

The only explanation provided was that Former President Kaz Jinno was making the assessment.

21.

Mr. Procuro complained about both the review and the lower percentage raise to the new President, James McDowell.

22.

Mr. Procuro noted when he complained to Mr. McDowell that the numbers for 2018 were up from 2017 with sales revenue up 8.8% compared to the prior year, the market share increase to 33.5% compared to the prior year of 31.7%, and refrigerated reach in unit sales up 18.1% compared to the prior year.

23.

Mr. Procuro was the only Hoshizaki America corporate Vice President or above given a lower than the 3.0% average merit increase.

24.

Two younger Vice Presidents, Brad Powell and Kris Miller were both given greater merit increases than Mr. Procuro.

25.

On or about October 1, 2019, Fred Clark, President and CEO of Webstaurant, a client of Defendant advised President James McDowell, in a meeting that Mr. Procuro was attending, to fire Mr. Procuro and other older Sales Executives because they were "old and antiquated."

26.

Immediately after the meeting, Mr. Procuro complained to Mr. McDowell about the discriminatory comment by Fred Clark.

27.

During that same complaint to Mr. McDowell, Mr. Procuro cautioned Mr. McDowell that he was not sure that entering into direct business relationship with someone who takes discrimination so lightly was right for Hoshizaki.

28.

Mr. Procuro further expressed concern for his team members in light of the discriminatory comments based on their ages.

29.

Mr. McDowell responded that the comments were okay and that Mr. Clark liked to put people on the defensive in negotiations.

30.

On October 15, 2019, in Brea, California, Mr. Procuro attended the Western Distribution Center of Hoshizaki America, Inc. ("WDC") sales meeting.

31.

During the meeting, Mr. Procuro took the WDC Sr. Vice President, Tom Smolinski, aside to another area to provide feedback regarding his teams' presentations.

32.

On or about October 25, 2019, the same client, Mr. Clark, made another comment about terminating the Sales Executives.

33.

Specifically, Mr. Clark made disparaging remarks about the "old guys in the room" that they did not not understand "the new way of business through the internet," which he described was "the only way to go."

34.

Mr. Clark again instructed Mr. McDowell to terminate the "old guys" because he was unsure that he could work with them.

35.

Mr. Procuro advised Mr. Clark that Hoshizaki America would do what was in the best interest of all parties involved, including his own team.

36.

After the meeting, Mr. Procuro again complained to Mr. McDowell that what Mr. Clark was doing was discrimination and it needed to be addressed.

37.

Mr. McDowell said that was the way that Mr. Clark did business and dismissed the incident.

38.

Defendant again failed to take any action to address the comments.

39.

The Chairman of Defendant's parent company, Seshi Sakamoto (Asian/Japanese), made comments that there is a need for "younger workers for the future."

40.

Chairman Sakamoto's comments were shared with Mr. Procuro and others by Japanese managers that they were in contact with over the last few years.

41.

On November 12, 2019, during a meeting with Mr. McDowell and Ms. Deanna Mar, Human Resources Manager, Mr. Procuro was told that they had received whistleblower complaints from three people regarding what they deemed was inappropriate behavior on his behalf while at the WDC sales meeting, including showing displeasure, throwing a cup, and having a discussion that others overheard.

42.

On November 13, 2019, Mr. Procuro traveled to Mexico for a planned business trip and was out of the office through Friday, November 15, 2019.

43.

On November 17, 2019, Mr. Procuro was informed by Mr. McDowell via telephone that he was being placed on administrative pending an investigation into the claims.

44.

During that same conversation with Mr. McDowell, Mr. Procuro complained that other executives who were Asian/Japanese were not placed on administrative leave during corresponding investigations for complaints that were received about them.

45.

Mr. Procuro's behavior at the WDC sales meeting was no different than the appoach that he had been using for the previous twenty-one years with the company without issue.

46.

Furthermore, other non-white, non-American employees of Defendant exhibited similar, if not more aggressive, behavior without repercussion.

47.

Mr. Procuro expressed to Defendant that he was being treated differently than Asian/Japanese employees were.

48.

On November 25, 2019 Defendant terminated Mr. Procuro over the phone for "just cause."

49.

Defendant did not explain what constituted the "just cause" for Mr. Procuro's termination.

50.

Following the phone call terminating him for "just cause," Mr. Procuro also complained to Yasuhiro Kobayashi, President/COO of Hoshizaki Corporation, in an

email, that he was being unfairly treated compared to the way in which Asian/Japanese executives were treated and that his termination was based on his race and national origin.

51.

On November 26 or 27, 2019, Mr. Procuro received separation paperwork that stated "involuntary-policy violation" as the reason for his termination.

52.

Mr. Procuro was never informed as to what policy he had been accused of violating.

53.

Mr. Procuro was held to a different, higher standard than Japanese executives were.

54.

For example, on October 22, 2019, Chairman Sakamoto hit an employee and addressed him harshly in front of the global budget meeting without any repercussion.

55.

Former Sr. Vice President of Hoshizaki America, Toshio Mase, hit an employee in the head without being disciplined.

56.

Former President of Hoshizaki America, Koichi Tsuemematsu, verbally attacked Vice President of Finance Bill Anderson.

57.

Despite that employee reporting the incident, there was no remedial action taken against Koichi Tsuenematsu.

58.

Former President of Hoshizaki America, Youki Suzuki, got into an argument with another worker, George Vurduress, and hit him.

59.

Instead of Youki Suzuki facing any discipline, Mr. Vurduress's contract was eliminated.

60.

Former President of Hoshizaki America, Kaz Jinno, was accused of making derogatory statements about the female HR director.

61.

He was not held terminated for these comments and continued to be employed at the corporate office in Japan.

62.

Additionally, Mr. Procuro was held to a different, higher standard than younger management personnel who were not terminated for significantly more terminable actions.

63.

For example, Rick Bassan, Plant Director of the Griffin Facility, who is younger than Mr. Procuro, was not terminated for misappropriating scrap money without authority or approval to do so.

64.

Mr. Bassan was removed from his position and placed as a 'specialist' until he was reinstated as the Director of Quality Control at a later time.

65.

Many older employees have recently been terminated or resigned due to the discriminatory treatment and climate at Hoshizaki.

66.

Despite Plaintiff's complaints, Defendant did not attempt to rectify the situation, and instead terminated Plaintiff's employment.

67.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

68.

Defendant treated other employees outside of his protected class, i.e. those younger than forty (40), non-White employees, and non-American employees, more favorably.

## COUNT I: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

69.

Plaintiff reincorpoates by reference paragraphs 13-40, 48-49, 62-68.

70.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his age in violation of ADEA, as amended.

71.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

72.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected his status as an employee because of his age.

73.

As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has lost wages and benefits.

## COUNT II:  RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

74.

Plaintiff reincorpoates by reference paragraphs 21-22, 26-29, 30-31, 36-38, 41, 43, 45, 48-49, 51-52.

75.

Plaintiff engaged in protected activity when he complained of age discrimination (paragraphs 26-29, 35-38).

76.

Defendant retaliated against Plaintiff by terminating his employment as a result of Plaintiff's protected activity.

77.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide its retaliatory motive.

78.

Defendant's retaliatory actions against Plaintiff were in violation of the ADEA.

79.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its retaliation against Plaintiff was undertaken in bad faith.

80.

As a result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered lost compensation and benefits.

81.

Pursuant to the ADEA, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADEA.

## COUNT III:  NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

82.

Plaintiff reincorpoates by reference paragraphs 13-23, 30-31, 41-61, 66-68.

83.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of his national origin (American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

84.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

85.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected his status as an employee because of his national origin.

86.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his economic, psychological, and physical well-being.

87.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT IV:  RACE DISCRIMINATION VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

88.

Plaintiff reincorpoates by reference paragraphs 13-23, 30-31, 41-61, 66-68.

89.

Defendant's actions in subjecting Plaintiff to ongoing race discrimination constitute unlawful discrimination on the basis of Plaintiff's race (white) in violation of Title VII.

90.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

91.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect his status as an employee because of his race.

92.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

93.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination and retaliation.

## COUNT V:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

94.

Plaintiff reincorpoates by reference paragraphs 41-52.

95.

Defendant's actions, as detailed above, in terminating Plaintiff because of his protected activity constitutes unlawful intentional retaluation in violation of Title VII.

96.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

97.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

## COUNT VI:  VIOLATION OF 42 U.S.C. § 1981

98.

Plaintiff reincorpoates by reference paragraphs 13-23, 30-31, 41-61, 66-68.

99.

Defendant subjected Plaintiff to discrimination and harassment on the basis of his race (white) and vis-à-vis national origin (American).

100.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race and national origin in violation of 42 U.S.C. section 1981.

101.

The effect of the conduct was to deprive Plaintiff of economic opportunites, and otherwise adversely effect Plaintiff's status as an employee, because of his race and/or national origin.

102.

As a direct and proximate result of these actions, Plaintiff has been made a victim of acts that adversely affected his psychological and physical well-being.

103.

As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to his emotional health, and has lost back pay and front pay.

104.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

105.

Defendant chose not to take appropriate remedial steps to prevent or correct the harassment.

## COUNT VII:  VIOLATION OF 42 U.S.C. § 1981 RETALIATION

106.

Plaintiff reincorpoates by reference paragraphs 41-52.

107.

Plaintiff engaged in protected conduct when he complained about race-based and national origin based discrimination.

108.

Defendant subjected Plaintiff to adverse employment actions after Plaintiff engaged in protected conduct.

109.

There was a causal connection between the protected conduct and the adverse action.

110.

As a direct and proximate result of these actions, Plaintiff has suffered damages.

111.

Defendant, therefore, is liable for the damages caused proximately resulting from its retaliation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for judgment as follows:

(a)     General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condemnation and approval of said acts;

(c)     Reasonable attorney's fees and expenses of litigation;

(d)     Trial by jury as to all issues;

(e)     Prejudgment interest at the rate allowed by law;

(f)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(g)      Injunctive relief of reinstatement, or front pay in lieu thereof, and

prohibiting Defendant from further unlawful conduct of the type

described herein; and

(h)      All other relief to which he may be entitled.

Respectfully submitted the 6th day of October, 2020.

**BARRETT & FARAHANY**

 s/ *Amanda A. Farahany*
Amanda A. Farahany
Georgia Bar No. 646135
Grace Starling
Georgia Bar No. 464958

*Attorneys for Jim Procuro*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
amanda@justiceatwork.com
grace@justiceatwork.com